071297 Mr. DeMatteo Thank you, Your Honor. There are at least five issues between Cordis' appeal and Voda's cross-appeal before this Court for decision. They're all built upon the first one, the District Court's claim to destruction of a law on the line of the catheter. So I'm going to focus most of my argument today on that issue. There are at least three reasons why this Court should construe engaging along the line of the catheter as requiring engagement of a straight section of the catheter of the aortic wall. First, that is what the patent specification describes as the invention. Second, the file history during the prosecution of this patent, the inventor can consistently distinguish his invention from catheters that engage on a curve. And three, common sense. Dr. Voda did not invent cardiac catheterization. By the time he filed this patent, for 20 years, doctors were engaging the aorta with thousands of catheters in thousands of different ways. He was not the first to engage the aorta 1.5 centimeters. I'd like to begin by focusing on the key sections of the specification where it describes the invention as a second straight portion. Column 9 of the 625 patent is the clearest example, and I begin to paraphrase at the bottom of line 65. The invention, the specification says, because the second straight portion of the guide catheter of the present invention rests naturally against the ascending aortic wall, a large area of backup support is provided. Again, at column 9, line 41, it says this advantageous orientation of the guide catheters of the present invention when in the aorta result directly from the configuration of the guide catheters. Which patent are you referring to? 625. In the brief, we always cite the 625 patent. Column 9, which is at A169, line 41. It talks about the advantageous orientation, what this invention is all about, how to orient the catheter in the aorta. The guide catheters of the present invention results directly from the configuration in its relaxed state before use. It continues and says foremost, the guide catheters of the present invention have a transition portion including the tertiary curve and second straight portion. It's that transition portion, and I paraphrase, that causes the second straight portion and the proximal portion of the secondary curve to form the contact portion in use that rests substantially contiguous against the wall of the ascending aorta. This language is repeated again at column 31. The specification continues and repeatedly describes engagement of the second straight member against the aorta wall as being its invention. In contrast, it talks about the prior junctions and is concerned about curved engagement because that curve would have stored energy, and that's found at column 22, lines 3 through 8. But it's reaffirmed in the file history. Throughout the course of patents that were filed in this case, the applicant, Dr. Voda, repeatedly emphasized that his invention was the second straight portion engaging the aorta wall. A clear example is in the 258 patent at A11294 where Dr. Voda says, applicant believes that the unique preformed configuration of the inventive claimed catheter is constructed to interact with an aorta in the claimed manner despite normal variations in the aorta. In particular, the second straight portion and the portion of the curved portion provide substantially rectilinear contact portion for resting against the wall of the ascending aorta. And most importantly in the 213 patent, we have the interaction of these claims and where along the line comes into play by amendment. Broad claims to engage in the aorta were rejected in view of three references, Faring, Bower, and Hanford. When confronted with those references, the claims were amended to recite along the line of 1.5 centimeters or just along the line. Dr. Voda discusses first those references and the only thing he talks about is the geometry of those catheters and how they interface with the aortic wall. He points out at A12532 that Faring discloses two curves, 14 and 16, that engage the ascending aorta. That's his only comment about Faring, it's engaging with a curve. Then he says Bower discloses a catheter including a curved portion 84 proceeding against the right side of the interior wall of the aorta. And then Danforth says it has a bend for engaging the ascending aorta. Curves and bend engagement. Then he contrasts that to his claim, the claim that's before this court. It says that his invention, unlike Faring, Bower, Danforth, engages the wall of the aorta opposite the distal end of the catheter when the distal end of the catheter is positioned along the line having a length of 1.5 centimeters. Then he goes back and compares that again to the prior art. Are you saying that that line means it's a straight line or a curved line? It's a straight section of the catheter that has to engage. 1.5 centimeters straight section to engage. What does it say? It's a straight engagement, straight line. That particular section is cited at A76 even in the lower court's opinion. This is part of the prosecution history where the argument was against Faring, Bower, and Danforth. It says each of the catheters disclosed by Faring, Bower, and Danforth engage the ascending aorta at a bend or curve along the catheter. None provide support along a line of about 1.5 centimeters or greater. Exactly right. So where does that require a straight line or a curved line? They don't use the word straight in the file history or in the claim. They're comparing the words engagement along a line to engagement with a curve. Looking at this patent specification, the prior art in these arguments, the inescapable conclusion is that's engagement with a straight section. He is not talking about anything else about this prior art. The vote in the district court made the argument that perhaps it's the length of the engagement or the location of the engagement. How straight do you think it has to be? And by that I mean, suppose you have something which is very close to straight, but it's actually a curve but with a radius of curvature of let's say 15 feet so that it's barely curved, but it's curved. Do you think that would be outside of the scope of the claim? In this claim, no. Why would it not be outside of the claim if the section that engaged the aortic wall was curved? It made a nice curve, but it was nonetheless a curve that strongly approached a straight line. We have two different points. We're talking about the catheter in its relaxed state. That's how the invention is defined. Does the straight section in the catheter in its relaxed state, can it have an ever so slight radius of curvature? Perhaps, because that may be equivalent. It's not line straight, but it's within the range of not even discernible to the eye. Right, well nothing could be purely straight, perfectly straight. So you'd have no such thing as literal infringement if you took straight in its mathematical sense. Exactly. So that can't be the right construction. Exactly. But both the accused devices and the prior art have significant curves here. Curves that would be defined by the specification as curved portions. If you look at the radius of curvature of our accused device and the radius of curvature of the curves in the voter patent, they're practically the same. So there's no dispute as to what curved engagement would be. So again, in the file history, the comparison is not length and location, it's curved engagement, curved portion engagement, compared to along the line of engagement. The third point is common sense. Twenty years before Dr. Voda invented his patent, doctors were using cardiac catheters to engage the opposite wall of the aorta, 1.5 centimeters. By a point of reference, my button on my chest is about 1.5 centimeters. To understand that Dr. Voda got a patent directed to a very specific catheter, with a particular sequence, as his patent calls them, of straight and curves, makes sense in view of this public record. You can do your rebuttal, Pat. Do you want to save it? I just want to make one more point, and then I'll sit down, Your Honor. But Voda makes the argument that he was the first to engage 1.5 centimeters and should be entitled to that coverage. Before I sit down, a brief word on willful infringement. This court, when we filed our opening brief, was operating under the duty of care standard of underwater devices, and we showed in our opening brief there could not be willful infringement. In our reply brief, by the time it was filed, Seagate came down, and under objective recklessness, the finding of willful infringement must be reversed. No reasonable juror, with indisputed facts in this case, could conclude that Cordes was objectively reckless. Thank you. Thank you. Mr. Skakwal. Thank you, Your Honor. May it please the Court. The two terms in this case are long-aligned and substantially straight. For long-aligned, Cordes wants to read in the term straight. For substantially straight, they want to read out the term substantially. That result would frustrate the very purpose of the invention in this case. It also is inconsistent with the relevant portions of the specification. Counsel made reference to the invention covering the catheter in a relaxed state. That is claimed in the 625 patent. The patents that are at issue in this appeal as to long-aligned and substantially straight relate to the catheter in the aorta. The relevant text of the patent, figure 8C and the surrounding text, make very clear that there is a straight section and a curved section that form the line along the curved aorta, a factual finding the district court made that Cordes does not challenge. Now, why is that significant? Cordes' constructions of a long-aligned and substantially straight clearly read the preferred embodiment out of the claims. There's just no question about that. In fact, below, at 82101, they told the district court that. With respect to a long-aligned, they said, contact with the aortic wall cannot occur along a bend or curve only along a straight section of the catheter. The first time they addressed the preferred embodiment issue was in their reply brief to this court. At page 3 of their reply, they said, well, our construction actually requires, it would allow the straight section and a portion of the curved section to bear against the wall. That position makes absolutely no sense given their argument for reading the straight term into a long-aligned is a prosecution disclaimer. How can the applicant have disclaimed contact with curves and yet according to Cordes' reply brief at page 3, the claim construction along the line would cover engagement with both a straight and a curved section? Those are irreconcilable positions. I think what's more likely is their reading of the prosecution history, as the district court found, is simply incorrect. The district court found that what happens is if you look at the references cited, and there's a good picture on page 15 of their opening brief, of Danforth, Gearing, and Bowers. The references cited show there's a point of engagement, if this is the osteum over here, there's a point of engagement along the ascending aorta at a curve or bend in those catheters. The argument the applicant made stressed two features. One, that there was going to be a long section of engagement, and two, that the section of engagement had to be opposite the catheter distal tip when it was in the osteum. And this is supported by the specification. At column 7, Dr. Voda's patent talks about the importance of the axis of support opposing the stenotic pushback forces as you're trying to push across the stenosis. Finally, I'll just point out that... Your Honor, it's not only our position, that's what Fearing says. Claim 3 of Fearing, a dependent claim, says it's a Judkin's catheter. And therefore, the drawing that's on page 15, you would suggest is just a little misleading. Because that doesn't look much like the Judkin's catheter that we have in other... That's exactly right, Your Honor. In fact, if you look at Fearing's disclosure, it says figure 1 is a schematic, partially diagrammatic illustration. You'd agree with me, I take it, that if you look just at the drawing, it looks like there is a considerable area of contact. As a lawyer, certainly. But Dr. Voda testified at trial, unrebutted, and he's done 3,000 catheter procedures, that that is not how a Judkin's catheter engages. And he explained that that was very well documented in the literature, and we submitted evidence at trial on that. So I don't think a lawyer can come in and say, well, we can scale this unscaled patent drawing up and start measuring what the aorta might be in this unscaled drawing and try to figure out how much contact engagement there was. I don't think that argument flies. You know, I think at heart, one of the issues Cordes really hasn't grappled with is the skill and the art issue. These claims are written for physicians. They understand that catheters are flexible tubes. That was part of the party's stipulated construction of catheter. The Cordes finding that the aorta is twisty and curved is not challenged. The other part of the Cordes construction that's not challenged is the fact that the segment had to bear against the wall. Well, if you take a segment of catheter that's flexible and you start putting force on it, it's going to bear against the wall. It's going to become curved, exactly as the patent showed. I want to address the willful infringement issue that was touched on briefly. One issue that we addressed in our brief was the standard of review. And we cited a case, Cadena, in which the Tenth Circuit said, look, if you have an intervening change in Supreme Court case law, you can sometimes establish plain error, but you have to still show that, in fact, there is a substantial injustice going on. Well, subsequent to Cadena, in 2003, the Federal Rules of Civil Procedure were amended. Plain error was actually put into Rule 51. And in 2004, in the Employers' Reinsurance v. Midcontinent case, 358 F. 3rd 757, the Tenth Circuit says, here's how we're going to be approaching plain error review where a party doesn't object to a charge. First, the role of plain error in civil litigation is very limited. The doctrine is limited to correcting a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. For this reason, plain error review is an extraordinary, nearly insurmountable burden. Now, in this case, we clearly had a portion of the charge that we acknowledge was incorrect. The duty of due care standard is now gone. Was that case that you just cited a case involving a change in law or simply a failure to preserve an error which was available under current law? You understand the distinction? Yes, I do understand the distinction. The employer's reinsurance case I cited just simply dealt with the plain error standard of review. The Medina case did, in fact, involve a change in law. The change in law cases would seem to me the more pertinent here. There are lots of instances in which some lawyer, given a fixed state of the law, simply fails to preserve a claim, and then you can say, well, that's shame on you. On the other hand, if the court's changed the law, that puts a very different spin, it seems to me, on the lawyer's failure to make an argument which was not available at the time but only became available later. Well, I think you're correct, Your Honor, but two things, and I think you've got to look carefully at what Cadena said. Cadena said, well, there was some area of the law here that could be predicted, and even in your Seagate decision, you relied on 1988 and 1985 Supreme Court case law under the Fair Labor Standards Act. You preview and talk about your case law leading up to Seagate that talks about the practical problems with the duty of due care standard. Now, the bar knew there were some problems with that standard. Was that enough to predict the problem and raise an objection? I think that's a debatable point. But moreover, what Cadena did is it then said, OK, there was a change in law, but let's look at what the evidence is and whether a fundamental injustice occurred that affected the integrity of judicial proceedings. And essentially, that throws us right back into the JMOL standard, which is especially appropriate in this case, given the issues in the charge. The charge talked about copying. While Cordes still disputes that on appeal, you can presume that the jury found in our favor on that. The charge talked about whether or not Cordes did a design-around, disputed on appeal. We get the inferences on appeal that the jury found in our favor on that. But the lower court did indicate there was a very close case. Your Honor, the court actually said, in reviewing the read factors, that it was not going to apply that particular read factor. And in fact, we argued that it was not a close case on the along-the-line issue. So I'm not sure there was actually a finding to that extent. Well, there was no finding to that effect, but there was substantial indications in the record below that the district court did believe it was a close case. Well, Your Honor, respectfully, I'm not sure of what you're indicating, but I believe that the district court simply found that particular read factor did not support the enhancement of damages. But regardless, the jury had the opinions that Cordes refers to before it. And again, we put in evidence suggesting that the opinions were make-weight, particularly given the fact that these XP marketing materials that Cordes had copied and continued using throughout the period and that we relied on to show an inducement of infringement of the method claims, they never gave those to the counsel. And when you look at those drawings and compare them to the figures and the claims, you realize you have a very serious problem. And when you looked at the opinions, the opinions don't discuss the specification at all. They simply conclusively assert that the prosecution history disclaims any coverage of a curve. There is no analysis there. The district court had that, the jury had that. I think on JMOL, on appeal, you have to construe those inferences in our favor. I think the other issue with respect to Seagate is stepping back. Was there evidence of record in this case showing objective recklessness? There was the pre-patent evidence showing explicit copy of both the actual Voda catheter and the marketing materials. After the patent's issue, Dr. Voda, the evidence in the record was he went to a trade show, he warned Cordes at the trade show of infringement. He actually showed up at Cordes and warned them of infringement. He sent letters warning them of the problem. They got one opinion before the case was filed. It was on the 213th. It had the deficiencies that I've just outlined. If we got as far as you are right now, we would have to send that back for reconsideration. Because you would be asking us to find facts which we're not supposed to be doing. Your Honor, I think that's exactly what Cadena says. When you're looking at the evidence, your role is to determine whether there was a fundamental injustice in this jury verdict. I don't think you can apply that standard. That's what the Cadena court did. It went through and looked at the evidence. You cannot apply that standard without at least assessing what the factual evidence is. If you apply that standard and look at the facts that we developed at trial, there should be an affirmance of the willfulness finding. I'm suggesting that if we got that far, I'm not saying we do, we would have to vacate it and remand it for reconsideration at the proper level. For reconsideration at both trials? We're not fact-finders. That's true, your Honor. But you are attempting to apply this fundamental injustice standard on plain error review that the Tenth Circuit applies. While you're not fact-finders, as the Tenth Circuit did, you are allowed to look at the record developed below and ask yourselves, as a court, was there a fundamental injustice in this case? And we would say, in the circumstances of this case, absolutely not. Not given the record of copying, not given the record with respect to the opinions, and not on the validity issue. Their only physician expert at trial, Dr. Hildner, had reviewed this when it came in, and he told Cordis Management this was a unique and novel design. Even if the Cadena standard is applicable here, what would be the reason that the trial court should not be the first to consider whether that standard is satisfied? Since the trial court never had the change in the law at any point before it. Well, I think the short answer to that is that Cordis' motion and appeal on this issue is for JMLL. They're asking for flat-out reversal. Well, but that doesn't confine our power to take steps less than JMLL. Obviously, they would prefer that outcome. My guess is if we ask them that between an affirmance and a remand, my guess is they would go for a remand. And I guess if you ask me between a reversal and a remand, you would know my answer. Right. But then that leaves us with the question of why we shouldn't allow the district court to make this determination in the first instance, since that court hasn't had a shot at this question and is in the best position, better than we are, really, to make that determination. Well, I certainly think that would be an appropriate exercise of this court's authority if, after applying the fundamental injustice standard, it thought that the issue needed to be remanded back to the judge most familiar with the facts. I see I'm into my rebuttal time. I'll be brief. I'm afraid Counsel Forvoda may be mistaken. In our opening brief at page 36, we describe our clean construction as requiring a second straight portion and not excluding additional curb contact. And there is no exclusion of the preferred embodiment. That is well-briefed. I will rely on the brief on that. Second, concerning Farron, I think Counsel has conceded in front of this court, and I'm holding up A14059, that there is significant contact across from the Austin. He's asking this court, and I'm convinced the lower court judge, that this is a completely misdrawn version of a Judgment of Catherine. On the public record, though, you don't see here or see any of that. On the public record, what was argued to the Patent Office is not that Farron was misdrawn or that it was a Judgment of Catherine and shouldn't be applied. You only see in the public record that curved engagement is occurring on Farron. We also showed in our brief that this is a common engagement of a Judgment-like Catherine. We showed the crediting reference as well as an article by Dr. King. In view of that clear statement, public statement in the file history, there is one proper construction for engaging along the line, that it requires a straight section. In view of that, we don't need to concern ourselves with willful infringement. But if we did, clearly this Court can and must reverse the finding and can reverse without remand based on the undisputed facts of what took place. Suppose we don't agree with you with respect to the Jamal question but are left unclear as to the proper resolution of the question of whether A, you've preserved your rights with respect to this issue and B, if you haven't, nonetheless, the manifest injustice of the Kadena standard, however it's articulated, is in play. What should we do with the case? You should reverse, which is a simple answer. Assuming we're not prepared to reverse and render, what do we ask, and instead we send it back to the district court, what do we ask the district court to do? What I'm trying to get at is do we ask the district court to examine the Kadena issue or is that something that we have to do first and upon satisfying ourselves that there is potentially at least a manifest injustice then send it back to the district court? I believe you should do it first. But the prerequisite to that is the Kadena factor does not apply. This issue is preserved. We could not, at that time, argue for a different standard for willful infringement. It was a well-adapted standard by this court. It was in the model jury instructions for numerous different authorities, the IPLA, the District Court of Delaware, the Northern District used this as a standard. Seagate himself didn't even understand when they finished. You said it's preserved. I think you don't mean it's preserved, you mean it wasn't required. Thank you, Your Honor. You didn't say anything to the district court at any point that we're the law, we wish the law were different and we'd like to preserve this issue. No, clearly we found out that even under underwater devices, which is a separate reason why you don't need to get it, we met the duty of care and we still believe that today. That issue is moved in view of Seagate and there was nothing we could have done to foresee that. So clearly there's no need to amend. But if you did, to answer your question, you would consider the containment factors first and then remand it for the court to determine whether it was a manifest injustice. Thank you. Thank you. Just a brief word in rebuttal on the substantially straight issue. The fact is that the same evidence that relates to the online supports the substantially straight position we have, which is the second half of the court's claim construction effectively read that term to be perfectly straight. That resulted in reading out the preferred embodiment, which is figure 8c of the 195 patent. And it also just reads out the term substantially, which this court has repeatedly held as just a modifier. It doesn't. It's a term of degree. Okay. Thank you. Okay. She's submitted.